This case is about a mother and her son in a deposit account at First Midwest Bank. So I know you've read the briefs, I'll just be real briefly. The facts are that at age six, Jared Newell was involved in a severe motor vehicle accident. He filed a products liability suit against the Ford Motor Company. Proceeds, net proceeds were $210,000 and some change. It was deposited at First Midwest Bank for the use and benefit of a minor child under a guardianship account, a consumer guardianship account they called it. With a restriction, the restriction was a minor account, no minor withdrawal until 18 years old on 5-18-2000 per court order. See Louise McLaren. The facts are undisputed that between, the money was deposited in January of 1994. There was three or four different deposits. By, let's see, it was September of 1997. The money was substantially gone. Mrs. Newell had withdrawn the money and used it for whatever. We're alleging it was our own use and benefit, but that issue is not before the court today. The issue that's before the court today is the statute of limitations. The record of the testimony by Jared Newell is that he had asked his mother about the money when he was 16 or 17. Mom told him, she changed the date to 21, he believed his mom. When he was 21, she told him it was 23, and when he was 23, that's when he finally got somewhat suspicious. Discovered the money was missing in March of 2000, or excuse me. Discovered the money was actually missing in March of 2007. He suspected things were not on the square in October of 2006. When he talked to his former attorney, who represented him when he was a child, Mr. Thomas Cogle, told him the money would have been deposited at the First Midwest Bank. Filed a suit, a responding discovery suit in April of 2007. Was changed to a breach of contract suit in October of 2007, later that same year. And Judge Michael Powers ruled that the summary judgment was appropriate based on the statute of limitations. We are here to discuss the statute of limitations this morning. Our brief, our argument is in two prongs. First, we allege that the tenure statute of limitations applies to catch all statute of limitations. And that's based on a distinction, and I'm well aware of the Uniform Commercial Code, Article 4, discusses bank deposits and withdrawals. And I'm also well aware of the Haddad case that says that if the statute of limitations is specific, that statute of limitations applies rather than the catch all. My only argument in the catch all tenure statute of limitations is that this particular account is not directly on point as to the policy and the considerations which are in Article 4 of Uniform Commercial Code. Uniform Commercial Code Article 4 deals with bank collections of negotiable instruments, checks, promissory notes, that type of thing. This is a guardianship account, it's a savings account. Now, in Article 4, the only time they mention savings accounts that I'm aware of is when in the definitional section they do mention savings account. There's no specific section in the article that deals with savings accounts. So I submit to this court that the type of account here is not specifically covered by Article 4 of the Uniform Commercial Code. And for the reasons I've stated in my brief, which I'm sure you've all read. Does anybody have any questions on that particular prong? If not, I'll move, excuse me, Judge. I'm sorry, Mr. Towns, but the court order that creates this, is it just in the minor? I mean, is there a college direction? Does it require that the money be withdrawn pursuant to court order? That is a good question, Judge, and that issue was part of my motion for summary judgment, which by implication was denied because they ran the statute of limitations. There is an issue of fact as to whether that court order went along with the depository card. The court order that should have been attached to the depository card was something that Tom Cogle testified to in his deposition, that he gave a copy of the court order to be attached to the account. At the time that he opened the account, he personally opened the account himself. That issue was part of my motion for summary judgment, which is not before the court. But yes, there is an issue as to, that's an issue of fact, it's a question of fact. That if you reverse it, I might get a chance to argue that, and maybe come back here and argue it again, so. I mean, I think in my mind, the order becomes a part of this, because if you're alleging a breach of contract, then I think that the longer statute may apply, the longer statute of limitation, because the discovery rule should be applied then. And so, You haven't entered any of that into evidence. No, because the judge merely decided this in the statute of limitations. That was all part and parcel of my motion as to whether that is deemed to be considered as case law. And that was part of my motion for summary judgment, which is in the record. But I must say that it's not really relevant to this particular part unless you reverse this case and give me a chance to put out a case, then it would be extremely relevant at that particular point. But no, this is strictly on the statute of limitations this morning. And my argument is, or what I stated in my brief, is that the savings account is more in line like a mutual fund or something more static than that. Judge, did you have a question? No, but I'm just wondering, does section four only apply to negotiable instruments? Well, no, the definition section does mention savings accounts. I mentioned that in my brief and just before you here. So there's a definitional section that does mention savings accounts. The article four is the type of article that governs the relationship between the bank and its depositors. I'm asking this court to carve out a little niche exception for a guardianship savings account that has a fiduciary component to it that's not necessarily involved in negotiable instruments, which are part of commerce. You want your check paid and there's some finality. So that's why I'm asking that that particular distinction. But if you don't buy that argument, if you think Callan's not on all fours on that one, the next one is the discovery rule, and I'm relying on the continental casualty case for that provision. The continental casualty case is, I gotta admire this accountant, this guy that pulled this off. It was pretty sharp. I've never come across anything quite as nefarious as this accountant. What he did was, is that he was representing this corporation, and they were paying their withholding taxes, and they'd make out a check payable to the bank, and payable to the bank to be deposited in their withholding accounts. You have a separate account for your employees and stuff like that. So what he did is he never altered the check into anything. He went to an AGM machine and deposited it in his, he deposited it in the same bank, but under his account. And it took about six or seven months before the IRS knocked on the corporate door and says, hey, where's our withholding taxes? And they said, what do you mean, we paid it, here's all our checks. Now, he didn't pay it because it went into somebody else's account. Unaltered, and unmodified, and unforged, it went into that account, which is very, very clever by that accountant. I think right after that, they changed CPA, used to be certified public accountants, they changed it to crooked people's accountant. So that's one of the things that happened, I believe, as a result of this particular case. The Connell Casualty case took this very same issue and said, well, this is a negotiable issue. This is a check, it's covered by the UCC Article 4 statute of limitations because they made the same argument I'm making. Well, this is a breach of contract case, and it ought to be the 10-year statute of limitations. Well, they had a check, I have a guardianship account. It's a little bit of, well, I suggest it's a significant difference, but in the Connell Casualty case, this Article 4 applies. But you're not lost, you still have a cause of action because of the discovery rule. Because both statutes say when the cause of action approves, both the 10-year statute and the three-year statute. So it's when the cause of action approves is the relevant point. I'm arguing to this court, and I submit that it's a little stronger argument than the first argument, is that the discovery rule applies, and that's a question of fact, generally. The question of fact is, Mr. Newell said I didn't know, nobody just discovered it. Well, it's a question of fact, when he discovered it, it's a question of law as to whether the discovery rule applies or not. Correct, absolutely, Judge, absolutely. That's your call. That's your call. I'm submitting that the Connell Casualty case supports my argument that the discovery rule applies in this. And furthermore, the Arlton case, I'm sorry, Mr. Kelly, finish it. I'm sorry, the Arlton case, ARPL, also said that the cause of action accrues when you make a demand and the bank refuses to pay, which I submitted my brief was when he filed his discovery and responded to discovery case, found out the money definitely is not there. So yes, that's absolutely the issue that you must decide in this case. And if you decide that the discovery rule doesn't apply, well, I won't be back here. On this particular issue, this particular case, I won't be back in Will County. I'll be done. I'll hang up my cleats and retire. So consequently, you've read the briefs, I know you have, and the Arlton case and the Connell Casualty case are the ones I'm relying on. And unless you have any other questions, I'm going to sit down. Okay, thanks. Thank you. Ms. Smiercki. Good afternoon, your honors. My name is Stacey Smiercki and I'm the attorney for the FLE First Midwest Bank. Appellant's argument seems to be that the accounted issue in this case is a special account. And therefore, we should have special limitations periods for special banking accounts. This theory conflicts with public policy. Banks do not invent special accounts to fit the circumstances. If banks were to do so, the cost of banking would be cost prohibitive. Instead, banks have procedures in place, for example, preparing detailed restriction cards, having those restriction cards approved by the customer, and in this case, also approved by an attorney for the customer and her minor son. These procedures prevent the unauthorized withdrawals and prevent the issues that were raised in this case. Appellant admits that his mother, Mrs. Newell, did not forge any documents or that she didn't have the right to access the funds. Instead, he takes issue with the restriction on the signature card, which as I stated, the attorney and the mother both reviewed and approved. I know your honor had mentioned an issue with the court order being incorporated into the signature card. If I may address that, there in the record is testimony from three bank employees that the signature cards are actually small index cards that are kept in a box. It's not possible to attach those court orders, and that's why they go through the detailed process of let's make sure the court order and the signature card match up. Did they in this case? They did do that. There is testimony, your honor. Did the court order and the signature card match up in this case? They did not, your honor. And in fact, I know Mr. Cogill, who Mr. Callen referenced in his argument, was the attorney for Jared Newell and his mother in the underlying litigation. He came into the bank to meet with Louise McLaren, and his testimony was he had actually met with her assistant. And he acknowledged reviewing the signature card and approving the language that was on that signature card. The mother also reviewed and approved that language. I do understand that the issue of the breach of contract is not before this court, but I felt I should address your concern about the court order issue. Ultimately, the appellant doesn't dispute that the signature card would contain the terms of any alleged contract here. He also does not dispute that this is a relationship between a bank and its customers. Therefore, the UCC would apply in this case. Section 4-111 of the UCC specifically provides that there is a three year limitation period on any claims involving the rights and duties and disputes between banks and their customers. This relates to bank deposits and collections. As Mr. Callen discussed in his opening argument, he admits that this is a deposit account, which interestingly is part of the definition of account in Article 4 of the UCC. That definition is any deposit or credit account with the bank, including demand, time, savings, passbook, share draft, or like account other than a certificate of deposit. Improper withdrawals are identified in the UCC as unauthorized signatures on items from an account. The statute language is clear and unambiguous. This is a savings account or like account as outlined in the UCC and therefore governed by the statutory language and the statute of limitations under the UCC. And I understand all that, and I guess my question to you is, who do you consider to be your customer or your client? The mother, the son, or both? Ultimately, Your Honor, we address this issue somewhat in the underlying case. Mrs. Newell was ultimately the contracting party. She was the guardian, she was the appointed guardian under the court order to open the account and to monitor these funds. Our agreement was with Mrs. Newell. As you know, Jared Newell was a minor at the time, couldn't contract with the bank. But I think the argument will be made in Mr. Callan's reply that he was a third party beneficiary of this agreement. And thus, Jared has the standing to bring his claim, obviously. But our agreement was with the mother. The court put her in a position of guardian, put her in a position of trust with respect to these funds. We have no evidence that she misused that trust and used this money for anything other than his health, education, and welfare, which was Jared's burden to prove. Well, first of all, do you disagree with the perceived argument from Mr. Callan that the minor was a intended third party beneficiary of this? We don't disagree, if that be his characterization. We don't disagree with that, and we don't disagree that he has the right to challenge what his mother did in this case with the money. But the minute the bank is out, he drops the mother from the case and dismisses the complaint against her to pursue this appeal. There were no criminal charges filed against the mother. There was no evidence submitted during discovery that the mother did anything other than support her son during this time, paying for educational trips. How long was it before the $200,000 was essentially exhausted? A majority of the funds, according to the record, Your Honor, it was September 30th of 1997, I believe a majority of the funds were gone, or maybe June 30th of 1997. And that's admitted in summary judgment and also in Mr. Callan's argument. So it was like nine months or something like that? It was actually, the money was deposited in January of 1994, so it was about over a three year period. And Mrs. Newell actually testified that I believe there were some medical bills that had to be paid from the accident and things of that nature. And we haven't received any information to the contrary that she used it for anything else. She didn't buy any new cars or new homes or go on elaborate vacations with her husband. Well, we don't know that because we're at this point in the proceeding, right? It may not come out later if there is a late. We actually did depositions of the plaintiff, of her mother, and also of the attorney involved in setting up the account, and there was no information presented. And ultimately, that's Jared Newell's burden to present that information that the mother misused the funds, and he didn't do so. There was no evidence brought forth in that regard. But is any of that really relevant to our statute of limitations? It is not. It is not. That's my question, I mean, what's the, so what at this point? Well, ultimately, Your Honor, I just wanted to address the concerns about the court order and what that language said and the relationship between the parties. As you're aptly pointing out, the issue here is whether the UCC's three year statute of limitations would apply or the ten year statute of limitations. And I think it's clear from the unambiguous language of the statute, as I stated earlier, the three year statute of limitations would apply in this case. But I want to go back to that because it's not quite so clear to me. Because you state that the mother is your customer or client. But the account is titled actually in Jared Newell's name with her as minor guardian. And I guess the question that I have is that the kind of casualty says that if a breach of contract is the basis that the discovery rule should apply and lengthen the statute of limitations. But your position is, no, she was the customer. We didn't have any obligation to him. So our contract is with her? Ultimately, with respect to the discovery rule issue, it's going, continental casualty basically says that you can apply the discovery rule, but there has to be some sort of fraudulent concealment or some sort of action by the bank where they were put on notice that something was going basically haywire. Continental casualty applied it to a fiduciary conversion claim, not a breach of contract claim. As the later case law explained in the kidney cancer association case, the discovery rule is only applicable in situations where there's conversion of negotiable instruments and allegations of fraudulent concealment. And I guess, I don't know how we even get to that point if we say you can't, you're not going to get there because the freer statute applied, because I think we have, by your admission, some problems. We have a signature card at the bank that doesn't match the account and the court order and the things that the bank has got some responsibility for, making sure they match up so that the wrong person doesn't come in and get money out of accounts. And I think we haven't gotten there, and I think that those are some important questions of fact. But you seem to be saying no, that without them alleging that the bank attempted to knowingly defraud him, we don't get into any of those issues. Ultimately, with respect to your concern about the court order and the signature card not matching up, there was no testimony from anyone at the bank that the court order was even brought to their attention. It was not something that anybody said, yeah, we reviewed that and we just screwed up here. The testimony was only from the attorney. The mother didn't even remember bringing in a court order to the bank. So if you have- But the attorney's testimony alone is going to create a question of fact on that issue, right? Ultimately, if we're discussing the breach of contract claim, but on the limitations period, a bank's relationship with its customer on a savings account is governed by the three year statute of limitations, you can't carve out special exceptions depending on the facts of a particular case, it would be a burden on banks and the fees for everybody else to do banking at these banks would be, as I said earlier, cost prohibitive. If we do get into the breach of contract issue, that's where this issue is better addressed. Were the terms incorporated from the court order? That's not before the court. A bigger item of public policy to make sure that when somebody who is impaired, whether they be a minor or somebody else, that when money is placed in a financial institution on their behalf, that only the people that the law says is entitled to the money, when they're entitled to it, can actually get it? I agree with your point, Your Honor, but ultimately there's also a statute in place for that disability of minor status. He gets an extra two years to file after he turns 18. As Mr. Cowan admitted in his argument, Jared knew at 16 that that money was there. And according to the record, he knew as early as potentially 14, I believe, and I'm sorry if I've got the record wrong, that this money was there and waiting for him. He continued to investigate from the age of 16 until he was 23 years old, seven years later. Investigated? He asked his mother what? He asked his mother repeatedly about the money. He also filled out federal student loan applications that indicated there was no savings for him or his parents, which would require him again to have that conversation with his parents. He spoke to his father. All during this seven year period, he was aware there was money there and did nothing. He even admitted in his deposition that his antenna was raised in 2002 that something suspicious was going on. 2002 is five years before he filed his claim against the bank. Ultimately, it's Jared Newell's responsibility to be reasonable. When he knew or should have known is the standard on the discovery rule. So even if we're going to say, okay, we'll let it slide. UCC will apply, but you get the advantage of the discovery rule in this kind of case, which I would say he should not. But if he should, in that circumstance, the record is replete with instances of him stating, yes, I asked her on this date. Yes, I asked her on this date. I asked her about the money at this point. I knew there were settlement funds waiting for me. I knew there was an account. I talked to my father about it. All these facts lead up to reasonably should have known. And even if you take one statement he made, his antenna was raised in 2002. That was five years before he filed this lawsuit against First Midwest Bank. Counsel, you have two minutes. Thank you. Ultimately, your honors, we would say that under the UCC, the discovery rule does not apply. The case law in this jurisdiction and other jurisdictions has said that the case law does not apply. Or the discovery rule does not apply. Continental Casualty does not support that position either. It discusses a fiduciary conversion claim, which is a tort claim, not a contract claim. There's no fraudulent concealment pled against First Midwest Bank. As such, the discovery rule should not apply in this case. And appellant hasn't cited to any case law that would support the position that a UCC breach of contract action is subject to the discovery rule. And as I previously stated, if you should determine the discovery rules apply, Jared knew or reasonably should have known at the very latest in 2002 when that antenna was raised. And that is what we need to keep in mind. Delay in trying to get his lawsuit filed is contrary to the purpose of the UCC. This case is about nothing more than an attempt to double dip. He reaped the benefits of those funds when he was a child. There's no evidence to suggest that he did not receive the benefit of those funds. But that argument has nothing to do with what we've got inside here today, does it? It doesn't, your honor. But in summary, we basically think that the delay is unreasonable at this point. If the discovery rule would be to apply, it's unreasonable for We believe the trial court properly entered summary judgment in First Med West Bank's favor, and we believe that should be affirmed. Thank you very much. And Mr. Kelly, anything you have about him? I just have a few things to say about that, Judge. First of all, the other day I was walking through the courthouse and I happened to run into Judge Hass, Judge Herman Hass. And the reason I say that is because this order was entered by Judge Hass back in 1994. The court order we're talking about that Mr. Kogel testified that he gave to the bank when he opened the account. And lo and behold, here's a copy of the court order he filed. I'm looking at it, and the actual writing was handwritten on here, and I'll read it to the court. I gotta take my glasses off first. It says, no funds shall be withdrawn from the minor account without prior court order, which dovetails right into the signature card that Justice O'Brien was raising here. So that's the first point, that the court order does reference, the signature card does reference almost the exact language that's handwritten on the court order. Because as I recall, Tom Kogel's testimony is that Herman Hass required that language to put out because it wasn't in the original order to type that part. You can look at it, it's in the record. Well, did Tom Kogel also testify that he reviewed the signature card? Yes, he did, yes. Did he approve it? Yes. Has he got a problem? He may, he may have a problem, that's true. But that's not before the court today. But he testified that he gave a copy of the court order to the bank with the signature card. And that's a question of fact that really isn't in front of this court today. But I wanted to raise that up for Justice O'Brien's question on that particular point. I submit that, I'm listening to Mrs. Smerecki's characterization of Mrs. Newell. And we don't have St. Ruth Newell here. Mrs. Newell withdrew all of the money, substantially all of the money within three years. There's testimony in her deposition replete with, what happened to the money, Mrs. Newell? I don't know, I can't remember. Did you withdraw $50,000 from this about three months or four months after the money was deposited and put it in a CD? Yeah, I guess I did. What happened to that money? I don't know, I don't know what happened to it. We have a record that is replete with, I don't know, I can't remember, it was a long time ago. There are absolutely no records of what this woman did with the money. And to talk about, well, this is really not relevant, I'm answering her point. We don't have St. Ruth Newell here. The money is gone and she's responsible for it, and the bank. And why is the bank responsible for it? I'll just briefly tell you what I'm arguing for this court. Number one, the Continental Casualty case is not a conversion case. It's a case where it's a breach of contract case. There is no forgery. That check was not forged, that check was not altered, that check was not wrongfully signed or forged. It was an authorized check, it was cleverly deposited in someone else's account. It's very similar to what we have here. We have Mrs. Newell, who has access to this account. Now, Justice O'Brien also asked, well, who's the owner of the account? If you look on the signature card, and that's also an issue that was in part of my motion for what to do with Muhammad Ali and Muhammad X and his estate. Talk about the owner of the account, the owner of the account, in this case, is Jared Newell, the buyer. His birthday's on that signature card, his social security number is on that security card. He's more than a third party beneficiary, he is the owner of the account. And the bank, according to this contract, has to give the money to the miner. That's the owner of the account, and that's the Muhammad X case. That is not before this court, it was part of my motion for summary judgment. So I have submitted to you judge that, or members of the panel, that the miner is the owner of this account. Mine is a fiduciary. Mine should only withdraw the money pursuant to a court order. Bank fumbled the ball when they opened the account and allowed this to happen. Just like in the Continental Casualty case. I guess the problem I'm having with that argument is that in Continental Casualty, the bank is the alleged actor, fraudulent actor, here in the mother- Well, the bank didn't act at all, judge. I mean, excuse me, I'm sorry. No, go ahead. The bank was the payor and the payee on the checking account. And it was wrongfully deposited, because if you read the Continental Casualty account, they have the signature card and the corporate resolution. And that's what, it's very similar here. We have the signature card and the court order, which comprise the contract. So consequently, I'm submitting the Continental Casualty case is almost directly on point. Because you do not have any fraud, conversion, and any other skullduggery. Nobody's been, yeah, that's what you have here. The owner of the account is Jared Miller Jr. So that's my argument, it's all in the briefs. I can't say any more, unless you have any other questions, I'll. Any questions? Okay, thank you very much. All right, thank you, Mr. Kellerman, and thank you, Ms. Maricki, for your time. We will take this matter under advisement, get back to you with a written disposition within a short day.